**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **SANDRA LOPEZ LOPEZ**<br><br>Plaintiff,<br><br>vs.<br><br>**THE ROBINSON SCHOOL, INC.; SAN JUAN CAPESTRANO HOSPITAL, INC.; DANIEL M. HILDEBRAND; MARIA TERESA LARRIEU; MELVIN SANTONI CRESPO, MD; ANGEL M. NARVAEZ MORELL, MD; AIG INSURANCE CO-PUERTO RICO, INC., DEFENDANTS A, B, C, INSURANCE COMPANIES; DEFENDANTS D, E, F.**<br><br>Defendants. | **CIVIL NO.**<br><br>RE: ADA, ADEA EMPLOYMENT DISCRIMINATION, RETALIATION; MALPRACTICE, FALSE IMPRISONMENT, UNLAWFUL HOSPITALIZATION, TORTS<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

# <u>C O M P L A I N T</u>

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiff Sandra Lopez Lopez ("Lopez"), through her undersigned attorneys and respectfully **STATES, ALLEGES** and **PRAYS**:

## I.  NATURE OF THE ACTION AND JURISDICTION

1.    Plaintiff Lopez hereby invokes this Honorable Court's federal question jurisdiction under 28 U.S.C. §§ 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought pursuant to the American with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and supplemental Puerto Rico laws as a result of being Lopez the victim of employment discrimination due to her perceived mental disability, her age, and retaliation perpetrated by her current employer, Defendant The Robinson School, Inc. ("Robinson") and its agents,

Complaint
Lopez v. The Robinson School, *et al.*
Page 2 of 23

co-defendants Dan Hildebrand ("Hildebrand") and Maria T. Larrieu ("Larrieu") after she

engaged in federal and Puerto Rico statutorily protected activity.

2.    Lopez also invokes this Honorable Court's pendent/supplemental jurisdiction

under 28 U.S.C. § 1367 seeking redress for violations of various Puerto Rico laws, including

but not limited to, Act No. 408 of October 2, 2000; Act No. 115 of December 20, 1991, 29

L.P.R.A. §§194 *et seq.*; Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146 *et seq., Act No.*

44 of July 2, 1985, 1 L.P.R.A. §§ 501 *et seq.*; and Puerto Rico's Constitution, Article II,

Sections 1, 8, 16, 20 and Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141.

3.    Lopez specifically pleads supplemental and pendent party jurisdiction over

her Commonwealth of Puerto Rico law claims as they are so related with her federal law

claims that they form part of the same case or controversy and all her federal and Puerto

Rico law claims arise under a common and same nucleus of operative facts.

4.    Lopez's Puerto Rico law claims and federal claims are part of the same case

or controversy because they derive from a common nucleus of operative facts and they

would ordinarily be expected to be tried in one judicial proceeding.

5.    On **September 18, 2015**, Lopez timely filed with Puerto Rico's Department of

Labor's Anti-Discrimination Unit ("ADU") and the United States Equal Employment

Opportunity Commission ("EEOC") an administrative charge against her employer

Robinson and its agents, Hildebrand and Larrieu claiming employment discrimination

because she was perceived or regarded as having a mental disability in violation of her

rights under the ADA and due to her age, and retaliation for having previously grieved of

employment discrimination.

Complaint
Lopez v. The Robinson School, *et al.*
Page 3 of 23

6.      The administrative charge filed by Lopez on September 18, 2015, with the ADU and the EEOC was assigned case Numbers 15-652c (ADU) and 16H-201500862C (EEOC).

7.      Lopez's filing of this administrative charge Numbers 15-652c and 16H-201500862C constitutes a statutorily protected activity under the ADA, the ADEA and Puerto Rico Act No. 115.

8.      On **May 18, 2016**, the EEOC issued and mailed a Notice of Right-To-Sue in the above referenced administrative charge filed by Lopez in Cases 15-652c and 16H-201500862C, previously referred to.

9.      On **May 21, 2016,** Lopez received the above referenced Notice of Right-To-Sue from the EEOC.

10.     Venue is proper within the judicial district of the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. § 1391(b)(2).

## II.      THE PARTIES

11.     Plaintiff Lopez is a female citizen of the United States of America and is a resident of San Juan, Puerto Rico.  Lopez was born on June 8, 1954.

12.     At all relevant times to this Complaint, Lopez was sixty-one (61) years old.

13.     At all relevant times to this Complaint, Lopez was within ADEA's protected age group.

14.     At all relevant times to this Complaint, Lopez was an "employee" within the definition of such statutory term as provided by ADA, 42 U.S.C. § 12111(4) and the ADEA,

Complaint
Lopez v. The Robinson School, *et al.*
Page 4 of 23

29 U.S.C. § 630(f) and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

15.     At all relevant times to this Complaint, Robinson was and still is an "employer," a "covered entity" and "a person engaged in interstate commerce" within the definitions of such statutory terms as provided by the ADA, 42 U.S.C. § 12111(2), 5(A), and (7) as well as an "employer" under the definition of such statutory term as provided by the ADEA, 29 U.S.C. § 630(f).

16.     At all relevant times to this Complaint, Robinson was and still is an employer under the Commonwealth of Puerto Rico employment discrimination laws that have been invoked herein.

17.     Robinson is an elementary and secondary educational institution and is incorporated under the laws of the Commonwealth of Puerto Rico.  As such, it is authorized to do business within the Commonwealth of Puerto Rico.  Robinson is located at 5 Nairn Street, (Condado) San Juan, Puerto Rico 00907.

18.     At all relevant times to this Complaint, Lopez was and currently is Robinson's employee.

19.     At all relevant times to this Complaint, Lopez was and still is a Social Studies and English teacher and member of Robinson's faculty assigned to its Pathways Program. Lopez teaches Elementary and Middle School students at Robinson.

20.     At all relevant times to this Complaint, Lopez was perceived to have a mental disability by Robinson and its agents.

Complaint
Lopez v. The Robinson School, *et al.*
Page 5 of 23

21.     Inasmuch as Lopez was perceived as having a mental disability, she was considered as an individual with disabilities under the ADA and Puerto Rico Act No. 44 by Robinson and its agents.

22.     Defendant Daniel M. Hildebrand was at all relevant times to this Complaint, the Head Master, Head of School, or Executive Director of Robinson.  At present, he is the Headmaster or Head of School of Visitation Academy, in St. Louis, Missouri.

23.     Upon information and belief, Hildebrand is a citizen of the United States of America and currently is a resident of St. Louis, Missouri.

24.     At all relevant times to this Complaint, Hildebrand was the hiring and firing authority at Robinson, and as such, Hildebrand was also an "agent" of Robinson within the definition of such terms provided by the ADEA, ADA and the Commonwealth of Puerto Rico's employment discrimination laws invoked herein.

25.     During his tenure at Robinson, Hildebrand was one of Lopez's supervisors.

26.     Hildebrand is being sued in his official capacity as an agent of Robinson under the ADEA and ADA.  Hildebrand is further being sued in his personal capacity under applicable Puerto Rico laws which he violated.

27.     Defendant Maria Teresa Larrieu is a citizen of the United States of America and a resident of Puerto Rico.

28.     At all relevant times to this Complaint, Larrieu was the Director of the Pathways Program at Robinson and, as such, was Lopez's immediate supervisor.

Complaint
Lopez v. The Robinson School, *et al.*
Page 6 of 23

29.     At all relevant times to this Complaint, Larrieu was also an "agent" of Robinson within the definition of such terms provided by the ADEA, ADA and the Commonwealth of Puerto Rico's employment discrimination laws invoked herein.

30.     Larrieu is being sued in her official capacity as an agent of Robinson under the ADEA and ADA.   Larrieu is further being sued in her personal capacity under applicable Puerto Rico laws which she violated.

31.     Lopez invokes this Honorable Court's pendent party/supplemental jurisdiction over Hildebrand and Larrieu as they jointly violated her statutory and constitutional rights as they requested, allowed and permitted that Lopez be forcibly hospitalized against her will and without her consent at Defendant San Juan Capestrano, Inc.'s psychiatric hospital.

32.     Defendant San Juan Capestrano, Inc. ("Capestrano") is a corporation organized under the laws of the Commonwealth of Puerto Rico and is authorized to do business within Puerto Rico.

33.     Capestrano operates a psychiatric hospital and/or a mental care institution that provides mental health care and substance abuse treatment in Puerto Rico. Capestrano's psychiatric hospital is located at Puerto Rico Road No. 877, Km. 1.6, Las Lomas, Calle Camino Real, Rio Piedras, PR 00926.

34.     Lopez invokes this Honorable Court's pendent party/supplemental jurisdiction over Capestrano and Defendants Melvin Santoni Crespo, M.D. and Angel Narvaez Morell, M.D., as such psychiatric hospital's employees and/or agents and medical doctors violated her statutory and constitutional rights as they required, allowed, and request that she be forcibly hospitalized, prescribed and administered anti-psychotic medications using

excessive force against her will and without her consent.  Such defendants, as Caspetrano's agents or employees, violated Lopez's constitutional rights to her dignity, liberty, and privacy as they ordered, required, permitted and allowed Lopez's restriction of her liberty and freedom by having her be committed to a psychiatric institution without obtaining her lawful consent and/or in violation of Puerto Rico Act No. 408.  These defendants while they were the admitting and attending physicians of Lopez at Capestrano, they violated Lopez's constitutional rights.

35.     Defendant Melvin Santoni Crespo ("Santoni"), M.D. is upon information and belief a Doctor in Medicine, a citizen of the United States of America and a resident of Puerto Rico.

36.     At all relevant times to this Complaint, Santoni was an employee or agent of Capestrano and was extended privileges by Capestrano to practice medicine within such psychiatric hospital or mental health care institution.  Santoni's actions and/or omissions caused damages to Lopez.

37.     Defendant Angel Narvaez Morell ("Narvaez") M.D. is upon information and belief a Doctor in Medicine, a citizen of the United States of America and a resident of Puerto Rico.

38.     At all relevant times to this Complaint, Narvaez was an employee or agent of Capestrano and was extended privileges by Capestrano to practice medicine within such psychiatric hospital or mental health care institution.  Narvaez's actions and/or omissions caused damages to Lopez.

Complaint
Lopez v. The Robinson School, *et al.*
Page 8 of 23

39.     Both defendants Narvaez and Morell also committed medical practice, as their actions and omissions ran afoul of established psychiatric medical treatment norms and practices.  These defendant physicians breached their duties of reasonable medical care toward Lopez.

40.     Defendant AIG Insurance Company-Puerto Rico is the insurer of both Robinson and Capestrano and of all named party defendants in this case.  Defendant AIG Insurance Company-Puerto Rico has insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by all named party defendants in this case, as these have been averred in this Complaint.

41.     Defendants ABC are other insurers of Robinson, Capestrano and the other named party defendants in this case.  Defendants ABC have insurance policies which at all relevant times hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by all named party defendants in this case, as these have been averred in this Complaint.

42.     Plaintiff Lopez is using the fictitious names of ABC because at this time she doesn't know the real names of such insurance companies.  Once the real names become known, Lopez will substitute those fictitious names with the real and actual names of such party defendants.

43.     Defendants D, E, and F are other are other unknown party defendants that have committed unlawful acts against Plaintiff Lopez.  Lopez is using the fictitious names of DEF because at this time she doesn't know the real names of such party defendants.

Complaint
Lopez v. The Robinson School, *et al.*
Page 9 of 23

Once the real names become known, Lopez will substitute those fictitious names with the real and actual names of such party defendants.

## III.    FACTUAL NARRATIVE COMMON TO ALL CLAIMS

44.    During the month of August 2005, Lopez began working at Robinson.

45.    For the last ten (10) years, Lopez has been a Social Studies and English teacher of the Elementary and Middle Schools at Robinson located in Condado, Puerto Rico.

46.    At all times relevant to this Complaint, Lopez has been assigned to teach at Robinson's Pathways Program, teaching students with special educational needs.

47.    Throughout her employment tenure with Robinson, Lopez has excelled in the performance of her duties and as such, has received positive job evaluation results from Robinson.

48.    Throughout her employment tenure, Lopez has excelled in her position as Social Students and English teacher and has met her employer's legitimate job expectations.

49.    For the Fall Semester of the academic year 2015-2016, Robinson increased Lopez's job functions and responsibilities due to the fact that she had an exemplary work record.

50.    During the month of August 2015, Lopez was given the task of heading the Bridge program between Elementary and Middle School Pathways students; assigned two middle school classes to teach in addition to teaching Social Studies.

Complaint
Lopez v. The Robinson School, *et al.*
Page 10 of 23

51.     Prior to September 2015, Lopez had never been reprimanded or disciplined for her job performance as a teacher at Robinson, or for her conduct towards her students and their parents.

52.     During September 1, 2015, Larrieu entered Lopez's classroom where Lopez had been assigned to work as a teacher while she was administering a test to her students.

53.     Larrieu entered such classroom and requested from Lopez that she immediately provide certain information involving Lopez's job functions (lesson plans) while Lopez was administering a test to her students.

54.     Lopez requested from Larrieu that she be allowed to finish administering the test to her students first and that Lopez would thereafter, provide the information requested by Larrieu.

55.     Lopez requested to Larrieu to allow her to first finish the administering and supervising of the test so that the students would not be distracted or disturbed during the taking of the test.

56.     Despite Lopez's stated request to Larrieu to have her provide the information requested after the class period and test had ended, Larrieu insisted that she wanted the requested information immediately.  Larrieu's actions adversely affected the classroom's atmosphere and disturbed the students while they were taking their test.

57.     Due to Larrieu's actions, some of the students stood up and began wandering about the room affecting other classmates' concentration during the test.

58.     As a result of Larrieu's actions, Lopez was then forced to place order among her students, sternly required that the class be quite, and that the students remain at their

desks so as to finish their tests.  During this incident in Lopez's classroom, Larrieu never admonished Lopez about the way she brought order to her class.

59.     On September 2, 2015 and without prior notice, Lopez was summoned to a meeting with her immediate supervisor Larrieu; Zuleika Carmona, Robinson's Human Resources Director, and Jannette Santiago, Robinson's Business Office Manager at the School's administrative office.

60.     At this meeting, Lopez was informed that she was being suspended from her employment pending an investigation for her alleged aggressive and improper classroom behavior that purportedly happened the day before, September 1, 2015.

61.     During the stated September 2, 2015 meeting, Robinson has pre-textually stated that Lopez was informed that there had been purported parental complaints notified to Robinson allegedly related to her performance and treatment of her students. Robinson has pre-textually advanced these reasons so as to cover up employment discrimination based on age and perceived mental disability.

62.     During the above stated September 2, 2015 meeting, Lopez denied that she had engaged in any behavior that would warrant any suspension.

63.     Upon immediate notice of her job suspension and after having pleaded not to be suspended, Lopez suffered a temporary nervous breakdown and fell to her knees.

64.     As a result of the undue pressure placed upon Lopez by the stated Robinson's agents and the wrongful stressful situation, she became temporarily emotionally distraught and as such, lost it and mumbled, without meaning it, that she wanted to kill herself.

Complaint
Lopez v. The Robinson School, *et al.*
Page 12 of 23

65.     During such meeting and thereafter, Lopez was perceived by Robinson and its agents, Hildebrand, Larrieu, Zuleika Carmona and Jannette Santiago of having a mental disability.

66.     Thereafter Robinson, through the previously mentioned agents, unlawfully understood and illegally perceived Lopez as being a direct threat to herself and to others, and as such around 6:00 pm ordered Lopez to get into a car and be driven to a place, which she later found out sometime after arriving there, that it was the Capestrano Psychiatric Hospital.

67.     Robinson did not allow Lopez to leave the school grounds until she acquiesced to go with them to a clinic, which she later found out (once she got there and was interviewed by Capestrano's officials, agents or employees) that she was being driven or taken to a psychiatric institution.

68.     Had Lopez known that she was been taken to a psychiatric hospital, she would have not obeyed her supervisors' orders that she get into the car.

69.     On September 2, 2015, Lopez was taken to Capestrano's Psychiatric Hospital by Hildebrand and Larrieu in Hildebrand's automobile.

70.     Once they arrived at Capestrano, Hildebrand required Lopez to interview with Capestrano's officials despite Lopez's concerns and complaints that she did not need to be in a psychiatric institution.  However, Hildebrand admonished Lopez and conditioned her continued employment at Robinson subject to her interview and hospitalization.

71.     On September 2, 2015, once Lopez knew, realized and became aware that Robinson, and its agents Hildebrand and Larrieu wanted to hospitalize Lopez at

Complaint
Lopez v. The Robinson School, *et al.*
Page 13 of 23

Capestrano, Lopez refused and clearly manifested that she did not want to be hospitalized or interned at such psychiatric hospital.

72.     Upon learning or becoming aware that all defendants herein wanted her to be hospitalized at Capestrano, Lopez unequivocally stated and voiced to defendants that she did not wish or wanted to be hospitalized and she proceeded to walk towards the exit doors of Capestrano.

73.     Once outside Capestrano's building, Lopez used her cellular phone and placed a call to Mr. Rafael Zapata, a taxi cab driver that she regularly had used in the past, requesting him to pick her up immediately at Capestrano so that she be transported to her home, an apartment in Condado, Puerto Rico.

74.     During her telephone call to her taxi cab driver, a group of about ten (10) Capestrano male employees forcibly restrained Lopez, assaulted her, twisted her arm, restrained her, forcibly removed her cellular phone almost breaking her fingers, took away her purse, and carried her back inside the Hospital against her will and consent so that she be hospitalized.  During this physical aggravated assault, Lopez continuously plead to be let go and demanded that she be set free.

75.     Both Larrieu and Hildebrand witnessed while Lopez was being physically restrained and assaulted and carried back inside the Hospital.  Lopez pleaded with Larrieu and Hildebrand to help her, that is, not to allow that she be assaulted and interned in the Hospital.  Lopez's desperate pleas for help to her work supervisors fell upon deaf and uncaring ears.

Complaint
Lopez v. The Robinson School, *et al.*
Page 14 of 23

76.     Hildebrand insisted to Lopez that she had to be hospitalized and Larrieu hid behind a wall watching and listening to Lopez' gut wrenching cries for help.

77.     Based on Robinson's agents' unlawful representations and false pretenses toward Caspetrano and defendant physicians, on September 2, 2015, Lopez was unlawfully committed and/or hospitalized against her will, without her consent, and without a prior court order requiring her psychiatric evaluation and treatment.

78.     On September 2, 2015, Lopez was hospitalized at Capestrano's Psychiatric Hospital and prescribed and forcibly administered anti-psychotic medications without her consent and knowledge of what medications were being administered to her.

79.     On September 2, 2015, Lopez was forcibly tied down by Capestrano's employees and/or agents and was forcibly administered medications against her will and consent because she refused to be medicated.  While she was being forcibly tied down and her freedom restricted, Capestrano employees and/or agents caused physical and emotional harm to Lopez.

80.     On September 2, 2015, two Capestrano male employees pushed Lopez against a bed, bent her over, raised her skirt and yanked her underwear down to expose her buttocks and genital areas, so that a female nurse could inject her with medication against Lopez's consent.

81.     Capestrano, its agents or employees, and defendants Santoni and Narvaez did not inform Lopez of her rights as a patient at such institution and did not inform her that she was going to be prescribed and administered psychiatric medications, including anti-psychotics.

Complaint
Lopez v. The Robinson School, *et al.*
Page 15 of 23

82.     During September 2 and 3, 2015, Lopez was physically assaulted and forcibly tied down against her will because she refused to be administered drugs that she had no knowledge of their name, side effects, or for what conditions they were being forcibly administered for.

83.     On September 3, 2015, Robinson through Larrieu unlawfully obtained a Court order under Puerto Rico Act No. 408 requiring that Lopez be submitted to a psychiatric evaluation.  Such Order, which was a Temporary Detention Order, did not authorize that Lopez be administered any medications or that she be forcibly committed to a psychiatric hospital.

84.     Larrieu and Robinson unlawfully obtained the above stated Act No. 408 Court Order that was never notified to Lopez at the time she was interned against her will at Capestrano.

85.     During her hospitalization at Capestrano, Lopez was never notified by Capestrano, Robinson, Hildebrand, Larrieu, Santoni and Narvaez that an Act 408 Order had been issued for her referral for a psychiatric evaluation.

86.     Capestrano, Santoni and Narvaez never notified the San Juan Court with the diagnosis, treatment and prognosis of Lopez' purported mental health illness after such Court issued its Order dated September 3, 2015.

87.     During her unlawful hospitalization, Lopez was subjected to infrahuman treatment, such as but not limited to, not being able to change her clothes, brush her teeth, was not allowed to sleep adequately, felt that she was living like a zombie in a horror movie, woken up by screams of other patients who were speaking other tongues, and felt

that she was living in a constant nightmare.  Such experiences continue to creep up on her during nightmares she currently experiences.

88.    During her unlawful stay at Capestrano, a nurse would constantly threaten Lopez that if she did not take her medications, she would call upon the male nurses to once again tie her down so as to forcefully administer medications through injection.

89.    Lopez was thereafter discharged from Capestrano conditioned upon the fact that she participated at Capestrano's partial hospitalization program.  As Lopez had no other choice but to comply and attend this program, because she was afraid and intimidated that if she refused, she would remain committed or hospitalized against her will at Capestrano, she acquiesced to continue at the stated partial hospitalization program. Caspestrano and its doctors unlawfully conditioned Lopez's discharge upon her continuation in the partial hospitalization program.

90.    On September 18, 2015, Lopez filed two (2) employment discrimination administrative charges with the ADU and the EEOC, claiming discrimination against her employer, Robinson, and its agents, Hildebrand, Larrieu, Zuleika Carmona (Human Resources Manager) and Jannette Santiago (Business Manager) in violation to the ADA and ADEA.

91.    On September 18, 2015, Robinson, Hildebrand, Larrieu, Carmona and Santiago, all received actual notice of the previously stated employment discrimination administrative charges filed by Lopez before the ADU and the EEOC.

Complaint
Lopez v. The Robinson School, *et al.*
Page 17 of 23

92.     On September 18, 2015, the above stated employment discrimination administrative charges filed by Lopez were received and read by Robinson, Hildebrand, Larrieu, Carmona, and Santiago.

93.     On September 18, 2015, Robinson, Hildebrand, Larrieu, Carmona and Santiago had knowledge and were well aware that on such date Lopez had filed employment discrimination administrative charges before the ADU and the EEOC.

94.     On September 18, 2015, Robinson, Hildebrand, Larrieu, Carmona and Santiago knew and were well aware that Lopez had engaged in statutorily protected activity with the filing of the above stated employment discrimination administrative charges before the ADU and the EEOC.

95.     On Monday, September 21, 2015, Lopez returned to work from a sick leave required and imposed by Robinson and its agents.

96.     Such work sick leave followed Lopez's involuntary hospitalization at the San Juan Capestrano Psychiatric Hospital.

97.     Lopez's involuntary admission and/or commitment at the San Juan Capestrano Psychiatric Hospital was the direct result of Robinson School's agents, Dan Hindelbrand, Maritere Larrieu, Zuleika Carmona and Jannette Santiago's actions by wrongfully perceiving Lopez as having a mental disability and posing an alleged direct threat to herself and to others, when this was not the case.

98.     The above stated Robinson employees and/or agents improperly induced San Juan Capestrano Hospital to have Lopez forcefully committed against her will.

99.    Upon Lopez return to work on September 21, 2015, Lopez was given a purported Teacher Improvement Plan (TIP).

100.    Lopez grieved and opposed such TIP as she was in total disagreement with it.  For example, this TIP brought forth matters that she had never been previously counseled with.

101.    This TIP was given to Lopez just three (3) days after she had grieved, opposed and complained about employment discrimination on Friday, September 18th and in retaliation because she had filed two complaints at the ADU and the EEOC.

102.    On September 21, 2015, Robinson disciplined Lopez because there was a purported parental complaint as to her manner of communication towards her students and other alleged performance issues.

103.    Prior to such date, Lopez had not been disciplined, counseled, warned or notified that a parent had lodged a complaint against her.  To the contrary, Lopez has always been commended, praised, admired and loved by her students and their parents.

104.    Prior to September 21, 2015, Lopez had not been disciplined, counseled, warned, or notified with any alleged job performance deficiencies.

105.    During the September 21, 2015 meeting, Lopez once again grieved, opposed and engaged in statutorily protected activity by voicing that she was being and had been discriminated against her because of her age as she was not being treated equally as the other teachers similarly situated to her.  For example, Lopez was assigned a heavier work load than her younger counterparts, she was required to manually turn in the grades while younger teachers with less seniority were not required.

Complaint
Lopez v. The Robinson School, *et al.*
Page 19 of 23

106.   During the stated September 21, 2015 meeting, Lopez further grieved, opposed and engaged in statutorily protected activity because she complained of nepotism, discrimination based on her perceived mental disability, age and because she had exercised her right to complain and safeguard her rights as a Robinson employee.

107.   During the stated September 21, 2015 meeting, Lopez further grieved that she wanted to be evaluated objectively with the same ruler when it came to workload, class assignments and performance as her fellow younger teachers and to receive unbiased job performance evaluations.

## IV. FIRST CAUSE OF ACTION
### (ADA: Being Perceived as Mentally Disabled Discrimination and Retaliation)

1.      Plaintiff Lopez re-alleges each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.  Defendant Robinson has willfully violated ADA's provisions by discriminating against Lopez due to her perceived mental disability and by engaging in retaliation against her on account that she engaged in statutorily protected activity for having grieved with Robinson, opposed discriminatory conduct and by having complained to the ADU and the EEOC of ADA discrimination against Defendant Robinson and its agents.

2.      Plaintiff Lopez demands compensation due to the moral and mental anguish she has suffered on account of Robinson's unlawful conduct.

3.      Plaintiff Lopez requests injunctive relief ordering these defendants to cease and desist from discriminating and retaliating against her in violation of the ADA.

Complaint
Lopez v. The Robinson School, *et al.*
Page 20 of 23

## V.  SECOND CAUSE OF ACTION
### (ADEA: Age Discrimination and Retaliation)

1.      Plaintiff Lopez re-alleges each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

2.      Defendant Robinson has willfully violated ADEA's provisions by discriminating against Lopez due to her age and by engaging in retaliation against her on account that she engaged in statutorily protected activity for having grieved with Robinson, opposed discriminatory conduct and by having complained to the ADU and the EEOC of ADEA discrimination against Defendant Robinson.

3.      Plaintiff Lopez demands compensation due to the moral and mental anguish she has suffered on account of Robinson's unlawful conduct.

4.      Plaintiff Lopez further requests injunctive relief ordering these defendants to cease and desist from discriminating and retaliating against her in violation of the ADEA.

## VI. THIRD CAUSE OF ACTION
### (Violation to Article II of Puerto Rico's Constitution)

1.      Plaintiff Lopez re-alleges each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

2.      Defendants Robinson, Hildebrand, Larrieu, Capestrano, Santoni and Narvaez have violated Plaintiff Lopez's rights secured under Article II, Sections 1, 8, 16 of Puerto Rico's Constitution by violating the dignity, privacy, health at the work place and discriminating against her on the basis of perceived disability and social condition.

3.      Plaintiff Lopez is entitled to compensatory damages.  Plaintiff Lopez has suffered considerable mental and personal damages as a result of Defendants' conduct.

Complaint
Lopez v. The Robinson School, *et al.*
Page 21 of 23

## VII. FOURTH CAUSE OF ACTION
## (Violation to Puerto Rico Act Nos. 115, 100 and 44)

1.      Plaintiff re-alleges each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

2.      Defendants Robinson, Hildebrand, and Larrieu have violated Plaintiff Lopez's rights secured under Puerto Rico Act Nos. 115, 100 and 44.  These defendants have discriminated against Plaintiff Lopez on account of her age, perceived disability and in retaliation because she engaged in statutorily protected conduct.

3.      Plaintiff Lopez is entitled to compensatory damages.  Plaintiff Lopez has suffered considerable mental and personal damages as a result of Defendants' conduct.

4.      Plaintiff Lopez further requests injunctive relief ordering these defendants to cease and desist from discriminating and retaliating against her in violation of the stated Puerto Rico laws.

## VIII. FOURTH CAUSE OF ACTION
## (Violation to Puerto Rico's Civil Code, Art. 1802 and Act No. 408)

1.      Plaintiff Lopez re-alleges each and every preceding allegation as if fully set forth herein and incorporate them by reference hereto.

2.      Defendants have violated Plaintiff Lopez's rights under Puerto Rico's Civil Code, Article 1802, 31 L.P.R.A. § 5141 and Act No. 408, previously cited.

3.      Plaintiff Lopez has suffered severe emotional damages arising from Defendants' conduct.

4.      Plaintiff Lopez is entitled to compensatory and physical damages she has suffered by Defendants' conduct, such as, but not limited to, damages to her knees.

Complaint
Lopez v. The Robinson School, *et al.*
Page 22 of 23

**WHEREFORE**, all premises being considered, Plaintiff Lopez prays that this Honorable Court enter Judgment against Defendants and grant Plaintiff the following relief:

(a)   An award of compensatory damages of not less than TEN MILLION DOLLARS ($10,000,000.00);

(b)   An award of double compensatory damages under Puerto Rico Law Nos. 115, 100 and 44;

(c)   An award of costs and reasonable attorney's fees;

(d)   Injunctive relief ordering Defendant Robinson and its agents to stop discriminating and retaliating against Plaintiff Lopez

(e)   An award of punitive damages under applicable federal laws invoked herein;

(f)   Any other and further relief, which this Honorable Court may deem just, and proper, and

(g)   A trial by jury.

In San Juan, Puerto Rico, this 20th day of July, 2016.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this same date, July 20, 2016, we electronically filed the foregoing certificate of service with the Clerk of this Honorable Court using the CM/ECF system.

/s/ **JOSÉ G. FAGOT DÍAZ**
**USDC PR No. 204112**
**Attorney for Plaintiff**
166 Presidente Ramirez St.,
Apt. No. 2
Urb. Baldrich
Hato Rey, PR  00918
Tel: (787) 367-8702
email: jgf@fagot-law.com

/s/ **MANUEL E. LOPEZ FERNANDEZ**
**USDC PR. No. 205507**
**Attorney for Plaintiff**
B-12 Paseo del Prado
San Juan, PR 00926
Tel.: (787) 562-2040
email: lcdomanuel.lopez@gmail.com

Complaint
Lopez v. The Robinson School, *et al.*
Page 23 of 23