IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SANDRA LOPEZ LOPEZ
Plaintiff

vs

THE ROBINSON SCHOOL, INC.; SAN JUAN CAPESTRANO HOSPITAL, INC.; DANIEL M. HILDEBRAND; MARIA TERESA LARRIEU; MELVIN SANTONI CRESPO, M.D.; ANGEL M. NARVAEZ MORELL, M.D.; AIG INSURANCE COMPANY-PUERTO RICO, INC.; MEDICAL DEFENSE INSURANCE CO.; ASPEN AMERICAN INSURANCE COMPANY; CONTINENTAL INSURANCE CO.; DEFENDANTS A,B,C (INSURANCE COMPANIES); DEFENDANTS D,E,F

Defendants

CIVIL 16-2372CCC

**OPINION AND ORDER**

This is an action for money damages and injunctive relief brought by plaintiff Sandra López López ("López"), a teacher at defendant The Robinson School ("Robinson"). López claims that Robinson, her supervisor María T. Larrieu ("Larrieu"), Daniel Hildebrand ("Hildebrand") and Robinson's Head of School, during the relevant time period, unlawfully discriminated against her under the Age Discrimination in Employment Act ("ADEA") because she had a heavier workload than younger teachers, was referred to as an 'old bag lady' by coworkers, was not invited to a coworker's retirement party, never received trainings outside of Puerto Rico, and was given a Performance Improvement Plan ("PIP"). She claims suffering discrimination under the American

Disabilities Act ("ADA") for Robinson's decision to take her to San Juan Capestrano Hospital to be evaluated after she suffered a temporary nervous breakdown during a meeting where Larrieu and other supervisors discussed her performance with her. She further asserts that Robinson retaliated by placing her on a PIP after filing an administrative complaint with the EEOC on September 18, 2015.[1]

Before the Court is Robinson, Larrieu, and Hildebrand's Motion for Summary Judgment (**d.e. 92**) filed on March 29, 2018. They contend that summary dismissal of the ADEA and ADA claims is warranted because López "lacks an actionable adverse employment action on which to anchor her claims of discrimination and retaliation under federal [] law." *See id.* at p. 1. As to the retaliation claim, they contend there is no causal connection between López' EEOC complaint and her placement in a PIP.

Having considered Robinson, Larrieu, and Hildebrand's (together the "defendants") Motion for Summary Judgment with Incorporated Memorandum of Law (d.e. 92) and their proposed Statement of Uncontested Material Facts in Support of Motion for Summary Judgment (d.e. 91) filed on March 29, 2018, López' Memorandum of Law in Opposition and Responses to the proposed Uncontested Material Facts (d.e. 114) filed on June 30, 2018, and defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Motion for Summary

---

[1] López' remaining claims under state law were dismissed without prejudice in the March 1, 2019 Partial Judgment (*see* d.e. 141).

Judgment (d.e. 125-1) filed on July 27, 2018,[2] the Court sets forth the following material facts, which are uncontested:

## Findings of Fact

1. Robinson School is a private school with toddler, pre-School, elementary, middle school and upper School Programs.

2. López began working at Robinson School as a part time substitute teacher on or around 2005 and was eventually hired as a full time elementary school teacher in the Pathways Program for the 2005-2006 academic year. She was sixty-one (61) years old during the relevant time period.

3. Larrieu has been the Supervisor of the Pathways Program at Robinson since June of 2007. López began reporting to her since then.

4. Hildebrand was Robinson's Head of School during the relevant time period and through October of 2015.

5. Cindy Ogg ("Ogg") was Robinson's Elementary School Principal and Assistant Head of School until on or around October 2015 when she became Interim Head of School. She became Robinson's official Head of School in December 2015.

6. Jannette Santiago ("Santiago") is Robinson's Business Operations Manager.

---

[2] The Motion for Leave to File Reply to Plaintiff's Opposition to Robinson/Larrieu's Motion for Summary Judgment (**d.e. 116**) filed on July 9, 2018, the Motion for Brief Extension of Time to File Reply to Plaintiff's Opposition to Robinson/Larrieu's Motion for Summary Judgment (**d.e. 120**) filed on July 23, 2018, Motion Requesting Leave to File Reply Memorandum of Law in Excess of 10 Pages, to File Spanish Documents and [for] Extension of Time to File Certified English Translations (**d.e. 124**) and the Motion Tendering Reply to Plaintiff's Opposition to Motion for Summary Judgment (**d.e. 125**) both filed on July 27, 2018, are all GRANTED, retroactively.

7.     Zuleyka Carmona ("Carmona") is Robinson's Human Resources Officer.

8.     On May 31, 2010, López received a Performance Evaluation for the 2009-2010 Academic Year.  In this evaluation, López received a rating of Needs Improvement (NI) in 17 performance areas such as planning, organization, reporting student progress, and communication.  Robinson recommended that she regularly check students' notebooks and provide written feedback; strengthen teaching proficiencies through the use of technology; be consistent in maintaining a professional record of punctuality; ensure that plan book evidences adequate lesson preparation; and keep abreast of new developments in the field of Special Education.

9.     On March 18, 2011, López received a PIP that included areas that were addressed during the 2009-2010 year but continued to need improvement.  Among them were instructional skills; learning environment; professional responsibilities; and interpersonal relations.  Specifically, for the area of professional responsibility Robinson indicated López still needed to improve in her compliance with her supervisor's and school's regulations, policies, procedures and instructions.  In the area of interpersonal relations, Robinson indicated that López still needed to communicate concisely, effectively, and positively with staff, colleagues, and administrations, and that she accept, internalize, and respond to constructive feedback in a positive manner.

CIVIL 16-2372CCC					5

10.  On June 23, 2011, López received another PIP indicating areas of her professional responsibility that needed improvement such as submitting rubrics, tests and projects for timely review, classroom conditions, working effectively and productively with co-workers, among others.

11.  On December 21, 2011, López met with Larrieu to discuss areas of her PIP that were not being met.  She was told she needed to hand in all formal assessments (tests, projects, and rubrics) according to school policy (three days in advance) in order to be revised and approved by the curriculum and program supervisors.

12.  On August 1, 2013, López participated in International Baccalaureate (IB) Curriculum Model Training with other Robinson School Faculty. The training was held at Baldwin School in Guaynabo, Puerto Rico. On October 20, 2014, López met with Larrieu, Ogg, and Carmona to address concerns brought to Robinson's attention regarding peers, students, and parents.  López was criticized for the tense tone conveyed in her emails, for ending the daily supervision of her homeroom students prematurely, and her defensive demeanor in interacting with coworkers.

13.  On or around the beginning of January 9, 2015, López participated in a Landmark writing workshop held at Robinson School.  López sent Hildebrand an e-mail thanking him for her participation in the workshop.

14.  On May 29, 2015, Ogg and Carmona met with López.  She was told that rubrics, organization, communication, correlation between what is given and what is said, teamwork, and honesty were areas López had to work on.

15.  On August 4, 2015, López emailed Larrieu and Ogg regarding her schedule for the 2015-2016 academic year.  She expressed her excitement for the opportunity to "be the bridge between Elementary pathways and Middle School" and requested to "interchange one of the Elementary Pathways Social Studies class for a tutorial or CAS, to give [her] more time to focus on this new challenge." CAS stands for Core Academic Subject and is a non-grading class. On August 14, 2015, in response to López' request, Robinson removed one class from her assigned schedule for the 2015-2016 academic year.  As a result, López had a lighter educational load and the opportunity to focus more on test preparation, rubrics, and other work required.

16.  Teachers at Robinson are visited by their supervisors during class time to observe the teacher's classroom skills, to review student notebooks and lesson plans.  The visiting supervisor does not interact with the students during the visit.

17.  On September 1, 2015, Larrieu visited López while she administered a test for her Pathways 6th grade Social Studies class.  Larrieu asked López for her lesson plans and grade books.  Although López gave Larrieu her lesson plans, her manual grade book was not ready.  That day, Larrieu took notes following her visit and observed that certain work was not corrected, that handouts were not in the students' notebooks or their folders, and that she did not find some work done by students, as stated in the lesson plans.  Larrieu also emailed Ogg, Carmona, and Santiago that evening to discuss her visit and

indicated that López became agitated and upset when she asked for her lesson plans.

18. During Larrieu's visit on September 1, 2015, certain students became rowdy, walked around the classroom, and started looking at each other's tests. López hit the desk with her hand and stated firmly that they needed to sit down while the test was taking place. Immediately after her visit, López met with Larrieu and expressed feeling discriminated against because of her age. Larrieu then wrote an email to Ogg and Carmona summarizing her visit to López classroom where she observed that López' tone of voice in responding to students was disproportionate and rude.

19. On September 2, 2015, López met with Santiago, Carmona, and Larrieu to discuss what Larrieu had observed during her visit to López' classroom the day before. López was asked about her communication style with the 6th grade students and whether she thought it was too firm. López responded that she was "firm but with love" and would continue to be firm with them. Santiago decided to suspend López with pay until September 11, 2015 because of López' responses during the meeting and Larrieu's observations during her September 1, 2015 visit.

20. Upon hearing that she would be suspended, López had a temporary nervous breakdown. She expressed wanting to kill herself, collapsed to the floor, and grabbed Larrieu's leg. While López was on the floor, Hildebrand walked in, helped López up and into a chair. Hildebrand asked López if she was ok and López responded she was not.

CIVIL 16-2372CCC            8

21. Hildebrand and Larrieu took López to the San Juan Capestrano Hospital later that day. She was discharged on September 4, 2015. López continued outpatient treatment at the San Juan Capestrano facility in the Condado neighborhood of San Juan from September 9 through September 16, 2015. During this time period, López remained on paid leave of absence.

22. On September 18, 2015, López filed a discrimination charge before the EEOC/ADU.

23. On September 21, 2015, López returned to work and continued with her previously assigned regular class schedule. López met with Ogg and Larrieu that day to discuss a Teacher Improvement Plan ("TIP").

24. The TIP stated that during Larrieu's September 2, 2015 visit, she observed López not displaying adequate responses to students, raising her voice, and hitting her desk in an effort to gain student attention. The TIP described this behavior as unacceptable. The TIP also stated that many of the performance issues that were brought to López' attention in May 2015 had not been improved upon. Among the areas listed in the TIP as unsatisfactory were López' planning and preparation; assessment; learning environment; communication, and professionalism. López was then placed on a Performance Improvement Plan until the end of the fall semester 2015 to address the performance areas identified as unsatisfactory.

25. López received two follow ups to the TIP – one on November 19, 2015 (signed on December 1, 2015), and one on May 13, 2016.

26. The November 19, 2015 TIP noted López improved in placing student's work in individual folders; she created a roll book; her reports were entered in a timely fashion; and she began planning interdisciplinary lessons. But on the follow up listed areas she still needed to improve, such as planning and preparation; assessment; learning environment; communication; and professionalism.

27. The May 13, 2016 TIP noted López had improved in placing student's work in individual folders; creating and upkeeping her roll book; entering reports in a timely fashion; and regularly keeping the classroom in an orderly fashion. But on the follow up listed areas she still needed to improve upon, such as, planning and preparation; working on building positive interactions with coworkers, staff and administration; and professionalism.

28. López was not placed on other improvement plans after May of 2016.

29. Robinson renewed López' contract for the 2016-2017 Academic Year. She accepted a new assignment in the Language Lab for that academic year, where no grading or testing is required. Her salary was not impacted. Robinson renewed López' contract for the 2017-2018 Academic Year and she was a teacher as of March 2018.

30. López' salary for the 2012-2013 academic year was $26,460.00; for the 2013-2014 academic year it was $27,709.92, and for the 2014-2015 academic year was $29,970.97. López' salary for the 2015-2016 academic year was $29,970.97; for the 2016-2017 academic year

it was $31,950.48. Her salary for the 2017-2018 academic year remained at $31,950.48.

31. There were no salary increases for the Robinson faculty in the 2017-2018 Academic Year.

Based on these Findings of Fact, the Court states the following:

## Conclusions of Law

### 1. López' Age Discrimination Claim

"The ADEA provides that it is unlawful for an employer to '… discriminate against [an individual] with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age.' A plaintiff asserting a claim under the ADEA has the burden of establishing 'that age was the 'but-for' cause of the employer's adverse action.' In the absence of direct evidence of age discrimination, [courts] evaluate ADEA claims under the three-stage burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 137–38 (1st Cir. 2012)(citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) and *Cameron v. Idearc Media Corp.*, 685 F.3d 44, 48 (1st Cir.2012).)

"Under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case for age discrimination by showing that (i) she was at least 40; (ii) her work was sufficient to meet the employer's legitimate expectations; (iii) her employer took adverse action against her; and (iv) either

younger persons were retained in the same position upon her termination or the employer did not treat age neutrally in taking the adverse action. Once the plaintiff establishes a *prima facie* case, there is a rebuttable presumption of discrimination, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for [the adverse action].  If the employer does so, the presumption vanishes, and the burden shifts once again.  Plaintiff is then required to show that the employer's proffered reason is but a pretext, and 'that age was the but-for cause of the employer's adverse action.'" *Del Valle-Santana v. Servicios Legales de Puerto Rico, Inc.*, 804 F.3d 127, 129–30 (1st Cir. 2015)(citing *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 26 (1st Cir.1998) and *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 447–48 (1st Cir.2009)).

López does not provide direct evidence of age discrimination, thus we apply the *McDonnel Douglas* burden shift framework.  As a sixty-one-year-old during the relevant time period, López easily establishes the first element. She fails, however, to meet the remaining elements of a *prima facie* claim of age discrimination.

It is undisputed that López was not meeting Robinson's expectations in the area of communications. *See* ¶¶ 8-13, 15.  The materials on record show that Robinson addressed López' deficient communication skills in 2010, 2011, 2014, and 2015.  In the 2010 Performance Evaluation and subsequent PIPs, Robinson repeatedly indicated that López needed to improve her communication style.  Throughout this period, Robinson showed a recurring

concern with López' communications with her superiors, coworkers, and students. This deficiency was again brought to her attention during the September 2, 2015 meeting where defendants decided to suspend her with pay. *See* ¶¶ 21, 26. The need to improve her communication skills was also noted in the TIP of September 21, 2015 and in her follow up meetings on December 1, 2015 and May 13, 2016. *See* ¶¶ 25, 28-29.

Nor is López able to establish that she suffered an adverse employment action as a result of her age. "An adverse employment action 'typically involves discrete changes in the terms of employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.' To be adverse, an employment action 'must materially change the conditions of plaintiffs' employ.'" *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012) (citing *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010)). None of the supposed adverse actions that López provides on account of her age changed the conditions of her employment. The fact that she never received trainings outside of Puerto Rico, by itself, does not constitute an adverse employment action, without showing how it was detrimental to her employment prospects. *See Pabon v. Vilsack*, No. CIV. 13-1147 MEL, 2015 WL 859543, at *8 (D.P.R. Feb. 27, 2015). Her allegation of having a heavier workload than younger teachers is speculative and unsupported by evidence on the record. *See Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 450 n.1 (1st Cir. 2016). That coworkers allegedly called her an 'old bad lady' does not amount to a

CIVIL 16-2372CCC 13

change in her employment condition.  Nor is there proof to attribute to this comment to Robinson or any of the employees with authority to change the conditions of her employment.  López claims that Robinson never investigated the hostile work environment created by co-workers making this comment. But nowhere in her Amended Complaint does she allege a hostile work environment theory.  *See* d.e. 64.

López has not submitted evidence that any action taken by Robinson – be it the PIPs and the criticisms stated therein, her attendance at trainings only in Puerto Rico, her workload or her suspension with pay – was determined, caused or even influenced by her age.

Having failed to make out a *prima facie* case of age discrimination, defendants are entitled to summary judgment on López' ADEA claim.

### 2. López' Disability Discrimination Claim (ADA)

López does not point to direct evidence of a disability discrimination, so we again apply the *McDonnel Douglas* framework.  In order to state a *prima facie* claim of disability discrimination, López must establish that "(1) she was 'disabled' within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was [] adversely affected, in whole or in part, because of her disability." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 82 (1st Cir. 2008).

López claims she was 'regarded as' having a disability by Robinson. "'An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he/she has been subjected to an

action prohibited under th[e] [ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Mercado v. Puerto Rico*, 814 F.3d 581, 588 (1st Cir. 2016) (citing 42 U.S.C. § 12102(3)(A)). The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112.

López argues that the she was discriminated based on a perceived disability when defendants took her to San Juan Capestrano Hospital on September 2, 2015 and when she received a TIP on September 21, 2015. But neither event affected her compensation or terms of employment, such that it constitutes a discriminatory act prohibited by the ADA. It is undisputed that while López completed outpatient treatment at San Juan Capestrano Hospital's facilities in Condado, she remained on paid leave of absence. *See* ¶ 24. It is undisputed that when López returned to Robinson on September 21, 2015 and received the TIP, she continued with the regular class schedule previously assigned to her and her salary remained the same. *See* ¶¶ 25, 33. It is also undisputed that when she accepted a new assignment in Robinson's Language Lab for the 2016-2017 academic year, her salary was not impacted. *See* ¶ 31. Thus, even assuming that López was able to perform the essential duties of her job, which we do not decide today, she has not established that there is a

genuine issue of fact as to whether she was adversely affected because of her perceived disability.

Reading the evidence in the light most favorable to López, and even assuming that she established a *prima facie* case of disability discrimination, Robinson has provided a non-discriminatory reason for its decision to take López to San Juan Capestrano Hospital, for her suspension with pay, and for the September 21, 2015 TIP. It is undisputed that López expressed a desire to kill herself and that she suffered a nervous breakdown when she was informed of her suspension. *See* ¶ 22. It is also undisputed that Robinson did not consider López was meeting its expectations when it decided to suspend her and issued the TIP. *See* ¶¶ 8-13, 15, 21, 25, 26, 28-29. López has not shown that these non-discriminatory reasons were a pretext for Robinson's disability discrimination.

Having failed to establish a *prima facie* case of disability discrimination or shown that Robinson's non-discriminatory reasons are pretextual, defendants are entitled to summary judgment on her ADA claim.

### 3. López' Retaliation Claim

In the absence of direct evidence of retaliation, we apply the *McDonnell Douglas* framework to her retaliation claim as well. To make a *prima facie* claim of retaliation, López must show that "(1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse

employment action." *Kelley v. Corr. Med. Servs., Inc.*, 707 F.3d 108, 115 (1st Cir. 2013).

It is undisputed that López' grievance to Larrieu of age discrimination on September 1, 2015 and her EEOC complaint of September 18, 2015 constitute protected conduct. López' suspension with pay on September 2, 2015 in turn represents an adverse employment action for purposes of making a *prima facie* case of retaliation. The September 21, 2015 TIP and two follow ups on November 19, 2015 (signed on December 1, 2015) and on May 13, 2016, however, are not adverse employment actions because López' salary and terms of employment did not change as a result of these plans. *See Reynolds v. Dep't of the Army*, 439 F. App'x 150, 153-54 (3d Cir. 2011) (following other circuits in stating: "a PIP is not an adverse employment action absent accompanying changes to pay, benefits, or employment status").

With respect to there being a causal connection between a protected activity and an adverse employment action, her grievance to Larrieu on September 1, 2015 and her suspension with pay the following day are sufficiently close in time to satisfy the causation requirement of a *prima facie* claim of retaliation. *See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007) (finding *prima facie* case of retaliation where plaintiff alleged that approximately two months had transpired between protected conduct and adverse employment action); *see also Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 26 (1st Cir. 2004) (finding

plaintiff met her burden of making out a *prima facie* case of retaliation when her suspension took place roughly a month after she filed her EEOC complaint).

Robinson has provided legitimate reasons for suspending López. The decision was made based on López' responses during the criticism made at the September 2, 2015 meeting and Larrieu's observations during her classroom visit on September 1, 2015. Robinson's criticisms of López during this meeting focused on her communication style with students. Robinson had informed López on numerous occasions that she needed to improve in the area of communications since 2012. *See supra* Section I. Robinson's reasons for her suspension were not pretextual.

To proceed on her retaliation claim, López must prove that Robinson's desire to retaliate against her was the but for cause of her suspension. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) (establishing that plaintiff must provide proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful actions of the employer). López has not established facts showing that Robinson suspended her in retaliation for her grievance of September 1, 2015.

### 4. López' State Law Claims under Act 44 and Act 115

López has asserted claims under Puerto Rico's analogous disability discrimination statute, Act 44, and a retaliation claim under Act 155. Since there is no diversity of citizenship between the parties, plaintiff invoked the Court's supplemental jurisdiction. Although defendants moved for summary

CIVIL 16-2372CCC                    18

judgment on these claims as well, federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed. *See* 28 U.S.C. § 1367(c)(3) (so specifying); *see also Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 1st Cir. 1995) (stating that "the exercise of supplemental jurisdiction in such circumstances is wholly discretionary").

Given our dismissal of the federal claims under the ADA and the ADEA, López' Act 44 and Act 115 state law claims are dismissed, without prejudice.

## Conclusion

For the reasons stated above, Robinson, Larrieu and Hildebrand's Motion for Summary Judgment (**d.e. 92**) is GRANTED as to all federal claims, to wit: López' discrimination ADEA, ADA and retaliation claims. Judgment to be entered.

SO ORDERED.

At San Juan, Puerto Rico, on March 1, 2019.

S/CARMEN CONSUELO CEREZO
United States District Judge